POLEN, J.
Appellant, Boca Concepts, Inc., appeals the trial court’s final judgment in favor of Appellee, Metal Shield Corp., as to the claims raised in Boca Concepts’ complaint (breach of contract and specific performance) after Metal Shield allegedly breached the terms of the operating agreement which created Metal Shield, LLC (“Joint Company”).
During the bench trial, the following evidence was adduced. Scott Levine owned 100% of Boca Concepts, Inc., and Haim Michaeli owned 100% of Metal Shield Corp. In January 2000, Levine and Michaeli formed the Joint Company. Boca Concepts and Metal Shield each held a 50% interest in the Joint Company. Upon forming the Joint Company, the parties executed an Operating Agreement which provided for the procedure for withdrawal of one of the partners from the partnership in Article XIV, entitled “WITHDRAWAL/PUT CALL.” That Article provided, in part:
ARTICLE XIV
WITHDRAWAL/PUT CALL
A. Notice of Withdrawal. As a means of resolving any future deadlock or disagreement among the Members from and after January 1, 2001, or in the event any Member shall desire to withdraw from the Company, after such date, then such Member (the “Offeror”) shall have the right to tender to the other Member (the “Offeree”) an offer (the “Offer”) to sell the Company Interest owned by the Offeror under the procedures set forth below. If the Offer is not accepted by the Offeree within the time limit set forth below, such Offeree shall be obligated to purchase, and the Offeror shall be obligated to sell to the Offeree all the Company Interest owned by the Offeror, upon the same price on the same terms as the offer made under this paragraph.
B. Notice. The Offer hereunder shall be made by written notice to the Offeree which shall state that it wishes to sell all the Company Interest held by the Offer- or. Such notices shall specify the price and terms of the proposed sale and shall include the address of the Offeror....
C. Duration of Offer. The Offer made under subparagraph A shall be irrevocable for a period of thirty (30) days from and after the receipt of such offer by the Offeree. Notice of acceptance shall be sufficient if delivered *569 within thirty (30) days given or in writing to the Offeror. In the event the offer shall be accepted by the Offeree, the parties shall close such transaction within thirty (30) days of acceptance and upon closing, the Offeror shall cease to be a Member of the Company.
D. Failure to Accept. If the Offeree rejects or fails to accept the offer within the time provided, the Offeror shall be obligated to purchase and the Offeree shall be obligated to sell all the Company Interest held by the Offeree within thirty (30) days after the expiration of the thirty (30) day acceptance period, at a price and on the terms provided in the Offer made under subparagraph A above. Upon closing of such sale, the selling Member shall cease to be a Member in the Company.
In the event of breach of Article XIV, the Operating Agreement provided for the remedy of specific performance.
Levine testified that, on March 20, 2008, he received a written offer from Michaeli, pursuant to Article XIV, to purchase Mi-chaeli’s interest in the Joint Company. The reference line of the letter referred to “notice of withdrawal/put call,” and the letter stated, in part:
Based on our recent conversations, I would like to put forth a notice of withdrawal and establish terms and conditions for closing. As I stated to you, I am offering you to purchase all the company interest that I own (Metal Shield Corp.) under the procedures set forth below:
1.“Company interest” shall include all of the following: All of the tangible and intangible assets of Metal Shield Corp., inventory, orders and contracts, supplies, equipment, and all related assets used in the business operation.
2. All work in progress, receivables and liabilities shall be allocated accordingly at closing.
3. I offer to sell all of the interest I hold in Metal Shield Corp. for the total price of $400,000 which shall be paid in cash at the closing. Within five business days of acceptance of this offer, you shall deposit $100,000 into a trust account of an attorney of my choosing to be disbursed upon closing.
4. Acceptance of this offer shall be within thirty days from the date of this letter.[1]
Should you decline the above offer to purchase my interests, I offer to proceed with purchasing your interest in the business (Boca Concepts, Inc.) under the same terms above.
Though the offer referenced Metal Shield Corp. and Boca Concepts, Inc., Levine knew that those corporations existed solely to hold Michaeli’s and Levine’s interest in the Joint Company. Neither corporation held an interest in any other entity.
Levine never told Michaeli whether he intended to accept his offer and purchase Michaeli’s interest in the Joint Company. Instead, Levine remained entirely silent on the point for thirty days, knowing that the Operating Agreement required Michaeli to purchase Levine’s interest in the Joint Company on the same terms if Levine did not accept the offer to purchase Michaeli’s interest. After thirty days passed, Levine told Michaeli that, because Levine had not accepted the offer, Michaeli had to buy Levine out.
On April 29, 2008, Metal Shield’s attorney sent Levine a letter in reference to “Letter of Intent to Purchase Boca Concepts, Inc.’s Interest in Metal Shield *570 L.L.C.” The letter stated that in accordance with Article XIV of the Operating Agreement of Metal Shield, L.L.C., Metal Shield Corp. was obligated to purchase all of Levine’s interest in Metal Shield, L.L.C. “upon the same price on the same terms as the original offer (dated March 20, 2008).” The letter went on to state that the parties were obligated to proceed in accordance with the terms of the Operating Agreement and the March 20, 2008 offer and that all terms not yet specified would be set forth in a purchase agreement and one or more definitive agreements to be mutually agreed upon by the parties.
On May 28, 2008, Michaeli sent Levine a letter referencing “Revocation of Metal Shield Corp. March 20, 2008 Letter,” which revoked any offers of Metal Shield Corp. and/or Haim Michaeli and advised that the March 20 letter did not invoke Article XIV of the Operating Agreement. Specifically, the letter stated, in part:
Metal Shield Corp.’s March 20, 2008 letter only referred to the sale of the assets of Metal Shield Corp. It was not an offer to sell only Metal Shield Corp.’s membership interest in Metal Shield LLC. Therefore, this March 20, 2008 letter was not within the specific terms of Article XIV of the Operating Agreement. Neither you nor Boca Concepts Inc. has accepted an offer to purchase such corporate assets of Metal Shield Corp. Since this letter revokes any offer of Metal Shield Corp. to sell its assets, prior to any acceptance, the March 20, 2008 letter is a nullity.
However, on cross-examination, Michaeli confirmed that his company, Metal Shield Corp. had no assets other than its interest in the Joint Company. Further, Michaeli testified that when he wrote the March 20 letter offering to sell his share of the Joint Company to Levine, he intended the letter to be in accordance with Article XIV.
The trial court, however, found that the March 20 letter was an offer according to its own terms, and was neither an offer nor written notice as contemplated by Article XIV because the letter made no mention of either the Joint Company or Article XIV. The court further determined that even if Levine could show that an offer was made under Article XIV, he may not be entitled to relief because the last sentence in Paragraph A of that Article actually provides that if Levine did not accept Michaeli’s offer for Levine to purchase Michaeli’s interest in the company within thirty days, Levine would be obligated to purchase Michaeli’s interest in the company. Thus, the court stated, “[i]f invoked, subparagraph A of Article XIV would impose the obligation to purchase on Plaintiff not upon Defendant.” Based on the foregoing, the trial court entered judgment in favor of Metal Shield Corp. on all counts. Boca Concepts now timely appeals.
Boca Concepts argues the trial court erred in determining that Article XIV was never invoked and in entering judgment in favor of Metal Shield Corp. because the March 20 letter clearly satisfied the requirements of Article XIV and constituted an offer, and once Levine failed to accept the offer within thirty days, Metal Shield Corp. was obligated to purchase Boca Concepts’ interest in the Joint Company on the same terms.
A trial court’s interpretation of a contract is subject to de novo review. Rose v. Steigleman, 32 So.3d 644, 645 (Fla. 1st DCA 2010). The court’s findings of fact are reviewed using a substantial and competent evidence standard. Thomas v. Vision I Homeowners Ass’n, 981 So.2d 1, 2 (Fla. 4th DCA 2007). This court must determine: (A) whether the March 20 letter constituted an offer which triggered Article XIV; and if so, (B) whether a contract was created.
*571 A. Whether the March 20 letter constituted an offer within the meaning of Article XIV.
The trial court’s dispositive determination was that the March 20 letter was neither an offer nor written notice as contemplated by Article XIV. The trial court based its determination on the fact that the letter did not reference Article XIV and did not mention the Joint Company. Instead, the court found that letter was written by Michaeli as President of Metal Shield Corp. and offered to sell Levine, as President of Boca Concepts, Inc., all of Michaeli’s assets in Metal Shield Corp.
Article XIV, Subparagraph B establishes the elements of an offer:
B. Notice. The Offer hereunder shall be made by written notice to the Offeree which shall state that it wishes to sell all the Company Interest held by the Offer- or. Such notice shall specify the price and terms of the proposed sale and shall include the address of the Offeror.
Subparagraph B does not require that the Joint Company be mentioned in the letter or that the offer specifically reference Article XIV.
Contrary to the trial court’s findings, it is clear that Michaeli’s March 20 letter contained all of the elements required by Subparagraph B. Moreover, the “Re:” line referenced “Notice of Withdrawal/Put Call” which was the title of Article XIV. The letter also tracked the procedure established by Subparagraph A of Article XIV insofar as it provided thirty days within which Levine could accept the offer, stated that closing would occur within thirty days of acceptance, and reiterated that if Levine did not purchase Michaeli’s interest, Michaeli would purchase Levine’s interest on the same terms stated in the letter.
Although the letter referred to Boca Concepts, Inc. and Metal Shield Corp., and did not refer to the Joint Company, it was clear from the testimony at the hearing that Boca Concepts, Inc. existed for the sole purpose of holding Levine’s interest in the Joint Company and Metal Shield Corp. existed for the sole purpose of holding Michaeli’s interest in the Joint Company. Therefore, to conclude, as the trial court did, that the offer did not involve the Joint Company and only involved Michaeli’s interest in Metal Shield Corp. is to draw a distinction where there is no practical difference.
Furthermore, the Operating Agreement states at the outset that it is between Metal Shield Corp. and Boca Concepts, Inc. and that each such corporation will sometimes be referred to as “Member” and collectively as “Members.” Subpara-graph A. under Article XIV provides that “in the event any Member shall desire to withdraw from the Company” then such Member shall have the right to tender to the other Member to sell the Company interest owned by that Member to the other Member. Therefore, the Operating Agreement provided for Metal Shield Corp., as a Member of the Joint Company, to offer to sell its interest in the Joint Company, to Boca Concepts, Inc. The fact that the March 20 letter referred to the respective Members and their interests in their corporate capacity does not prevent the March 20 letter from constituting a Notice of Withdrawal under Article XIV. Instead, references to the separate corporations that made up the Members of the Joint Company were appropriate. The only way the March 20 letter could have been made clearer would have been to specifically reference the Member corporations’ respective interests in the Joint Company. Instead, the letter referenced the interest held by each of the Member companies.
*572 Finally, if there were any doubt as to the intent of Michaeli in the March 20 letter, Michaeli’s attorney clearly stated in the April 29 letter that Michaeli had made an offer in the March 20 letter and that pursuant to Article XIV, Metal Shield Corp. was obligated to purchase all of Levine’s interest in the Joint Company for the same price and on the same terms as those stated in the original offer dated March 20, 2008. Though the trial court concluded that the attorney’s statements had no effect, the statements prove that the March 20 letter was an offer pursuant to Article XIV.
Because we find that the March 20 letter triggered Article XIV, we must determine whether Boca Concepts’ action or inaction created a contract between the parties.
B. Whether a contract was created.
After determining that the March 20 letter was not an offer under Article XIV, and was instead an offer according to its own terms, the trial court concluded that the parties never assented to all the same essential terms because they were still negotiating at the time of Michaeli’s revocation of his March 20 letter. However, because we have found that the March 20 letter was an offer under Article XIV, we must also determine whether that offer was ever accepted.
Subparagraph D of Article XIV, entitled “Failure to Accept” provides:
D. Failure to Accept. If the Offeree rejects or fails to accept the offer within the time provided, the Offeror shall be obligated to purchase and the Offeree shall be obligated to sell all the Company Interest held by the Offeree within thirty (30) days after the expiration of the thirty (30) day acceptance period, at a price and on the terms provided in the Offer made under subparagraph A above. Upon closing of such sale, the selling Member shall cease to be a Member in the Company.
The provision clearly states that, if the Offeree rejects or fails to accept the offer, the Offeror is then obligated to purchase the Offeree’s share of the company on the same terms as those provided in the offer. Here, not only did Levine fail to affirmatively accept the offer, but Michaeli testified that Levine rejected the offer orally. According to Michaeli’s testimony, shortly after he sent Levine the March 20 offer letter, Levine approached him and said “I am not going to buy you.” Therefore, Metal Shield Corp. was obligated to purchase Boca Concepts’ interest in the Joint Company on the same terms as provided in the initial offer of March 20.
Finally, the trial court did point out that Paragraph A may not provide for the relief sought because it actually required Boca Concepts to purchase Metal Shield Corp.’s interest if Boca Concepts failed to accept the offer within thirty days. The court reached this conclusion after replacing the terms “Offeror” and “Offeree” with “Defendant” and “Plaintiff’ throughout the paragraph. Paragraph A is confusing in this regard, and it seems obvious that this was a typographical error. Paragraph D, the “Failure to Accept” provision, seems to accurately state the parties’ intent, and it provides that if the Offeree fails to accept within thirty days, the Offeror becomes obligated to purchase the Offeree’s share of the Joint Company. It is clear from the proceedings below that both parties ascribed the same meaning to Article XIV. Moreover, as Boca Concepts points out, no party raised this issue below or argued regarding any ambiguity in the contract. Therefore, the trial court was not permitted to base its decision on this ground. Collins v. Bannon, 774 So.2d 66, 67 (Fla. 2d DCA 2000) (“A judgment may not be *573 based on an issue that has not been framed by the pleadings, noticed for hearing, or litigated by the parties.”).
We hold that the trial court erred in concluding that the March 20 letter was not an offer pursuant to Article XIV and that the parties never reached an agreement.

Reversed and Remanded.

HAZOURI and CIKLIN, JJ., concur.

. Although the sentence following in paragraph 4 is not clear in the record, it is to the effect that closing shall occur within thirty days of the date of acceptance of the offer.